195 So.2d 71 (1967)
MISSISSIPPI PUBLIC SERVICE COMMISSION
v.
HINDS COUNTY WATER COMPANY and Dixie Water Company.
No. 44092.
Supreme Court of Mississippi.
February 13, 1967.
*72 Rubel L. Phillips, Bennett E. Smith, Jackson, for appellant.
Morse & Morse, Joe Jack Hurst, Wells, Thomas & Wells, W. Calvin Wells, Justin L. Cox, Jackson, for appellees.
INZER, Justice.
Appellees, Hinds County Water Company, herein referred to as Hinds, and Dixie Water Company, referred to as Dixie, filed notice with Mississippi Public Service Commission, referred to as Commission, of intent to increase rates and charges for water service in the area certified to the companies in Hinds, Madison and Rankin Counties. The Commission by proper order suspended the proposed schedule of *73 rates for a period of ninety days. Thereafter it entered another order further suspending the rates for a period of six months. The companies entered into bond in accordance with the Public Utility Act of 1956, and put the increased rates into effect pending final determination of the controversy.
Hinds and Dixie filed separate petitions, but they were consolidated for hearing. Separate orders were entered in each case. The Commission, after a lengthy hearing, denied any increase to Hinds and granted an increase to Dixie to the extent of $8,000.
Hinds and Dixie appealed to the Chancery Court of the First Judicial District of Hinds County, and the chancellor rendered a written opinion wherein he found that there was no substantial evidence to support the order of the Commission in the following respects: (1) rate of depreciation; (2) contributions in aid of construction; (3) projection of anticipated revenue; (4) treatment of interest income. An order was entered vacating the orders of the Commission and remanding the petitions to the Commission to conduct a hearing and to establish rates not in conflict with the findings of the court.
On this appeal the Commission urges that the chancellor was in error in his findings and that the decree of the chancery court should be reversed and the order of the Commission reinstated.
Since the essential facts are set out in the opinion of the chancellor, it is appropriate that the opinion be quoted:
Opinion of Chancery Court
This Court, after carefully considering the record of trial before the Mississippi Public Service Commission, the pleadings, and the briefs of Counsel, finds that the Orders of the Mississippi Public Service Commission dated February 9, 1965, in its docket No. U-951, being the Hinds County Water Company case, and docket No. U-952, being the Dixie Water Company case, should be wholly vacated and these matters remanded to the Commission for such further proceedings not inconsistent with this Court's Order and Opinion as justice may require.
The reasons for vacating the Orders and remanding these causes are that these Orders of the Commission are not supported by substantial evidence and are contrary to the manifest weight of the evidence.
The Hinds County Water Company is a corporation doing a general water distribution business in an area located adjacent to and outside of the City of Jackson, Hinds County, Mississippi. The Dixie Water Company is a corporation doing a general water distribution business in an area located in Hinds, Madison and Rankin Counties, Mississippi. Dixie Water Company is a wholly owned subsidiary of Hinds County Water Company, and the case of Dixie was consolidated with the Rankin Water Company suit before the Mississippi Public Service Commission, Rankin Water Company being a wholly owned subsidiary of Hinds. Rankin is a corporation doing a general water distribution business in an area located in Rankin County, Mississippi.
Hinds was organized in 1927 and has continuously done a general water distribution business since that date. The serviceable area of Hinds, according to the Certificate of Public Convenience and Necessity, was limited to the area outside the city limits of Jackson, Mississippi. As the city limits of Jackson have been extended the serviceable area of Hinds has been pushed farther out from the center of the City of Jackson. The most far reaching expansion of the city limits occurred in 1961. In 1960, pursuant to the then forthcoming 1961 expansion, Hinds was forced to sell to said city under threat of condemnation a large part of its distribution system from which it derived a large portion of its revenue. *74 In fact, the most profitable part of the system, covering the area most densely populated was the part sold to the City of Jackson.
Dixie was acquired by Hinds in 1961, and Rankin, also, was acquired by Hinds in 1961. The water customers of Hinds numbered 4,480 as of August 31, 1960, and after the sale to said city the water customers numbered 1,692.
Hinds received its last increase in rates in 1941. There has been no increase in rates for Dixie or Rankin since their acquisition by Hinds in 1961.
The principal witnesses called by Hinds and Dixie were:
Garner M. Lester, President of both Hinds and Divie, who had been in the general water distribution business since 1927. He was Vice-President of Hinds County Water Company from 1927 to 1934, and has been President of Hinds County Water Company since 1934 and President of Dixie Water Company since it was organized in 1961.
Mr. W.L. Patterson, who is a principal engineer and partner in the firm of Black & Veatch, Consulting Engineers of Kansas City, Missouri. He has been with this firm since 1928, and graduated from the University of Kansas with a degree of Bachelor of Science in Civil Engineering in 1927, and the professional degree of Civil Engineer in 1933 from the same University. Since December, 1949, he has spent almost his full time on valuation and financial rate studies in public utility matters.
Edward A. DeMiller, Jr., Hinds and Dixie's Certified Public Accountant.
The Commission's principal witness was:
Douglas H. Brumfield, who is a Certified Public Accountant, is now Chief Accountant of the Public Service Commission, and has been employed by the Public Service Commission since 1956. Mr. Brumfield also holds a law degree and is a member of the Mississippi Bar.
Although Mr. Lester has lived with and devoted almost his full time to the work of Hinds County and Dixie Water Companies since 1927, and although Mr. W.L. Patterson is a graduate Civil Engineer and has devoted his full time since 1933 to the design and construction, the appraisal and the study of public utility systems, the testimony of these experts in the field of water distribution systems was almost completely disregarded and ignored by the Commission, and the testimony of Mr. Douglas H. Brumfield, the Commission's Chief Accountant, was adopted completely and in toto, even though Mr. Brumfield testified that he had no experience whatsoever in the water distribution business, nor had he had any banking or investment experience, nor had he had any experience in managing, conducting and administering a private business of any kind. Several times in his testimony Mr. Brumfield admitted that he was basing his testimony on data testified to by W.L. Patterson, although the Commission in its finding called Mr. Patterson's testimony conjectural, speculative, unrealistic and unreliable.
The Commission's Orders are not supported by substantial evidence and are contrary to the manifest weight of the evidence on such questions as the annual depreciation of Hinds and Dixie, on the treatment of contributions in aid of construction, on increasing Hinds and Dixie's anticipated revenue for the pro forma year beginning August 1, 1964.
The Commission's Orders are not supported by substantial evidence and are contrary to the manifest weight of the evidence in adopting a composite 3% depreciation rate proposed by Brumfield rather than Hinds and Dixie's long standing Internal Revenue Service approved rates of depreciation based on classification *75 of Hinds and Dixie's property in six different classifications, specifically depreciated according to the depreciation of each class of property.
The Commission's Orders are not supported by substantial evidence and are contrary to the manifest weight of the evidence in including interest income in the income received by Hinds and in not including the capital which produced this income in the rate base for Hinds. In this Court's opinion it would be better to exclude the capital from the rate base of Hinds and also exclude the interest income from the income of Hinds, but if it is determined that either should be included, then in the interest of equity and justice both should be included, the interest income in the income, and the capital producing this interest in the rate base.
It is the opinion of this Court that when the numerous adjustments indicated, and other adjustments which will appear to the Commission on a rehearing, have been made, then the logical and reasonable result of these adjustments in the rate base and income of the three companies will be the granting of a monthly minimum water rate of close to the figure of $4.00 per month for residential users applied for and requested by Hinds and Dixie and Rankin. The Court has particularly noted that the $4.00 minimum monthly water rate is exactly the rate charged by the City of Jackson, Mississippi, a municipal and tax exempt corporation, to its residential water users outside the corporate limits of the city. The interest of the investor as well as the consumer should be considered by the Commission, and the ability to secure working capital and financial backing should not be endangered by holding these water companies to rates that have proven to be confiscatory.

Issues on This Appeal
The major item involved on this appeal is the annual rate of depreciation for the test year of 1963, and the pro forma year beginning August 1, 1964. Hinds and Dixie introduced financial statements and schedules reflecting income and expenses for the years involved. The major item of expense was the annual depreciation charge. The depreciation schedule set up by the companies was the same depreciation schedule that they had used for income tax purposes. Under this method the depreciation had been determined by classifying its plant accounts into six major categories of property for the purposes of determining depreciation. Mr. Lester, president of the company since 1934, who had been actively engaged in the management of and the operation of Hinds since 1927, testified in support of the depreciation schedule used by the companies. He knew from actual experience how long the various items of property had lasted during the years. He testified as to the soil conditions which affected the life of the water lines, the actual useful life of an average water well in the area in which they were operating. He knew from experience how many years a pump could be expected to last in this area. In other words, he was able to testify from actual experience how long various classes of property used by the company in its operations could be expected to last. His testimony supported the depreciation schedule used by the company in establishing its rate base for the years involved. No other witness had made any study or had any special knowledge relative to the conditions that existed in the area which affected the useful life of the property involved.
Mr. Brumfield, a lawyer and an accountant who is employed by the Commission, testified that he had no special knowledge relative to the expected useful life of the property involved and that he had no experience in this field. Mr. Brumfield, in determining the expenses of the companies for the years involved, reduced the depreciation figure set up by the companies about fifty per cent. He stated that his reason for so doing was that he had learned that a three per cent rate of depreciation was being *76 employed by water utilities, electric utilities, and telephone utilities. It was his opinion that, because these other utilities were using the three per cent composite rate, it should be applied to Hinds and Dixie.
We are of the opinion that the chancellor was justified in finding from the evidence that the Commission's order in adopting the three per cent composite depreciation rate was not supported by substantial evidence and that it was contrary to the manifest weight of the evidence. The Commission was not required to adopt the depreciation rate proposed by the companies in their schedule of expenses for the years involved, but if the Commission was to disregard this schedule and refuse to adopt it, the rate it adopted should have been supported by evidence. There is no substantial evidence to support the depreciation rate adopted by the Commission. The finding of the chancellor relative to this item is affirmed.
Hinds and Dixie agree that the usual contributions in aid of construction should be deducted from the rate base in accordance with our decisions in United Gas Corporation v. Mississippi Public Service Commission, 240 Miss. 405, 127 So.2d 404 (1961), and Southern Bell Telephone & Telegraph Company v. Mississippi Public Service Commission, 237 Miss. 157, 113 So.2d 622 (1959).
However, it is contended that the contributions here involved are unique contributions and the rule announced in the above cited cases should not control. The Commission reduced the rate base of Hinds in the amount of $14,910.72 for the years involved. Hinds contends that the Commission was in error in so doing for the reason that this amount is attributable to property previously removed from the rate base of Hinds due to normal abandonment and retirement. We do not think that the fact that these contributions are in aid of construction which has now been abandoned by Hinds and replaced with other facilities changes the rule. The fact that some particular plan facility is abandoned has nothing to do with the net rate base other than to reduce gross cost of facilities from which the total contribution in aid of construction is deducted. It is assumed that the abandoned plant has been paid for by the water customers by reason of annual depreciations which are part of the operating expense each year. The mere fact that a particular item of property has been abandoned or fully depreciated is no reason the contributions in aid of construction made by the rate payer to that item of property should be deducted in determining the rate base. To do so would allow the utility to earn a return on property contributed by the rate payer. Therefore, we are of the opinion that the chancellor was in error when he determined that the order of the Commission relative to the contributions in aid of construction was not supported by substantial evidence. Mississippi Pub. Serv. Comm. v. Home Tel. Co., 236 Miss. 444, 110 So.2d 618 (1959).
The Commission urges that the chancellor was in error when he determined that the Commission should not have included interest income as utility income to Hinds. The finding of the Commission on this point is as follows:
Included in the "Net Utility Income available for Fixed Charges and Surplus" is $8,725.25 designated by the utility as interest income earned from lending money to wholly owned subsidiaries who are engaged in the distribution of water and disposal of sewage for a fee. The funds used in the lending operations resulted from the sale by Hinds County Water Company, Inc. to the City of Jackson for a total consideration of $610,591.00 on which the utility reaped a net gain of $455,107.66 on plant in service paid for by rates and charges assessed *77 to the water customers of Hinds County Water Company, Inc. It is obvious that it would be inequitable to penalize the present customers of the Hinds County Water Company Inc. by eliminating from utility income a return on funds gained by a sale of part of the water system having been paid for by the present water customers. It is obvious that if the Hinds County Water Company, Inc. had expanded its operations without forming subsidiaries then this income, termed "Interest Income" would have been income from the sale of water. To permit the utility to eliminate this income would be to recognize as meritorious a financial maneuver which would penalize the customers of Hinds County Water Company, Inc. to the extent of this elimination.
On the other hand, the utility complains that it is necessary to borrow money amounting to $180,000.00 at December 31, 1963, with interest rates from 5 1/2% to 6% on a short term basis which interest has to be paid for by its water customers. This is but another example of the inequity present in the operations of the utility. The utility has a book capitalization of $671,827.83 to finance the operation of a plant in service with an average rate base of $139,344.47 (Supra). This amounts to $4.82 to each dollar invested in the rate base.
The utility complains that it has been unable to pay dividends with the exception of a 5¢ stock dividend. This claim is unfounded because Hinds County Water Company, Inc. has $6.36 surplus for each dollar of authorized and issued capital stock.
The question relative to the treatment of this interest income presents a unique situation. Counsel have not cited and we have not found a decision of any court in point on this precise question. After careful consideration we are unable to say that the Commission was in error in its treatment of the interest income. Mississippi Code Annotated section 7716-07 (1956) (Public Utility Act) vests the Commission with rather broad powers to establish a system of accounts and accounting for public utilities. In Mississippi Public Service Commission v. Home Telephone Company, supra, it was held that the system of accounting "is partly a legislative question," and that section 7716-07 "vested the commission with considerable authority to establish a system of accounts to be kept by public utilities." It was further held that the Commission had a reasonable area of discretion in prescribing accounting systems for public utilities.
In examining the accounting of Hinds and Dixie for the purpose of rate fixing, the Commission properly lifted the corporate veil and looked at the situation with due regard to the rate payers of both corporations. It took into consideration all factors involved, and we cannot say under the unusual circumstances that the Commission's finding is not supported by the evidence. The finding of the chancellor with reference to this item will be reversed.
The Commission urges that the chancellor was in error in determining that the Commission's finding relative to the anticipated income of Hinds and Dixie for the pro forma year was not supported by substantial evidence. We do not deem it necessary to discuss the evidence relative to this assignment, for the reason that the pro forma year has now passed, and upon remand of this case the figures showing the exact amount of income for the pro forma year will be available. The Commission will take that income into consideration in making its final decision.
Finally the Commission urges that the chancery court was in error in undertaking to establish the levels of rates to be fixed by the Commission. The chancellor in his opinion did indicate that he *78 thought that after the adjustments he found should be made were actually made, this would result in a minimum monthly rate near the figure of $4 per month, which was the rate charged by the City of Jackson to its customers outside the corporate limits. There was no evidence in the record regarding the reasonableness of the rates charged by the City of Jackson or the condition of its operations, and the chancellor was in error in making this comparison. However, we do not construe his opinion as being an attempt to fix the rate, but he was merely giving his impression as to what a reasonable rate would be after adjustments he thought necessary were made. If it was an attempt to direct the Commission as to the rate to be fixed, it was error. It is beyond question that the function of rate making in this state is purely legislative in character, and a court is without power to fix rates charged by a public utility. We have firmly established this rule in a number of cases. United Gas Corp. v. Mississippi Pub. Serv. Comm., 240 Miss. 405, 127 So.2d 404 (1961); Southern Bell Tel. & Tel. Co. v. Mississippi Pub. Serv. Comm., 237 Miss. 157, 113 So.2d 622 (1959); Mississippi Pub. Serv. Comm., v. Home Tel. Co., 236 Miss. 444, 110 So.2d 618 (1959).
For the reasons stated, we affirm that part of the decree of the chancery court in which it reversed the order of the Commission as to depreciation, since it is not supported by substantial evidence. We reverse the decree of the chancery court as to contributions in aid of construction and the inclusion of interest income as utility income to Hinds, since those parts of the order of the Public Service Commission were proper and supported by substantial evidence. This cause is remanded to the Public Service Commission for further proceedings in accordance with this opinion.
Affirmed in part, reversed in part, and remanded to Public Service Commission.
ETHRIDGE, C.J., and RODGERS, JONES and BRADY, JJ., concur.